**People of the State of Illinois, Plaintiff-Appellee, v. Arthur Carmichael, Defendant-Appellant.**

Gen. No. 50,331.

First District, Third Division.

February 23, 1967.

Rehearing denied April 13, 1967.

R. Eugene Pincham, Charles B. Evins and Earl E. Strayhorn, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Joel M. Flaum and James B. Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In a nonjury trial the defendant was convicted on two counts—the unlawful possession of a narcotic drug and the unlawful sale thereof. He was sentenced to the penitentiary for terms of 5 to 10 years and 10 to 12 years for the respective offenses. He contends that a police informer supplied the narcotics which provided the basis

for the charges against him and that this constituted entrapment. A summary of the testimony follows.

Police Officer Mitchell Ware of the Illinois Narcotics Division testified that Charles Brooks, who at the time was under arrest for a narcotics violation, told him that he (Brooks) could purchase narcotics from defendant. On September 9, 1963, Brooks who was in Rockford, Illinois, telephoned defendant in Chicago and arranged to come to his apartment the following day to buy some marijuana. On September 10, 1963, Officers Joseph Mandell and Mike Iasparro of the Winnebago County Sheriff's Police drove Brooks from Rockford to police headquarters in Chicago, where he was searched by Ware and given $55 in marked money. Brooks was then driven by the police officers to defendant's apartment and went into the building while the police waited in the car. Ware stated that a few minutes later Brooks returned to the car with a bag containing narcotics which he said he received from the defendant in exchange for $46 of the marked currency. Ware and the other policemen then entered defendant's apartment from the front and rear doors and discovered two quantities of marijuana in the apartment and $15 of the marked money on defendant's person. On cross-examination Ware testified that the $15 represented all the marked money that was recovered.

Ware further testified that on November 26, 1963, subsequent to defendant's arrest, he had occasion to speak with defendant in the corridor of the Criminal Courts Building, where defendant related that on the night of the arrest Brooks brought the narcotics to defendant's apartment in the heel of his shoe. Ware said that defendant also admitted that he and Brooks "used to smoke pot together."

On cross-examination, Ware testified that Brooks was given $15 in expense money for cooperating with the

police; that he would be further reimbursed for any loss of income because of time spent testifying for the State, and that he was told that his working with the police would be brought to the attention of the State's Attorney of Boone County, Illinois, where he faced trial for a narcotics violation.

Charles Brooks testified on behalf of the State, corroborating the testimony of Officer Ware with respect to arranging a controlled purchase of narcotics from defendant. He described the purchase as follows:

"Well, he said he had a package I had called for. I gave him the money and he gave me the package."

He testified that he paid defendant $46 for the narcotics; that he left the apartment and returned to the car where the police officers were waiting and gave Ware the drugs he had purchased and the remainder of the marked money, which amounted to $9.

On cross-examination Brooks said that he was arrested on July 27, 1963, for unlawful possession of narcotics; that the case was disposed of prior to the defendant's trial; that he was also arrested on October 31, 1964, for the same offense and that cause was still pending (at the time of defendant's trial); that he had been, but was not presently, a user of narcotics. He testified with respect to the earlier arrest that he had not been promised any consideration for working with the police, but later said that the police told him it would be to his advantage to cooperate. Brooks stated that he had known defendant for three years; that he had been to defendant's apartment two or three times with his young daughter and that he did not recall whether he had been there during the ten-day period prior to defendant's arrest.

Defendant testified in his own behalf that he had known the police informer Brooks for eight or nine years

prior to the arrest; that Brooks came to his apartment on Sunday, September 1, 1963 at about 9:00 a. m.; that he had his baby daughter with him; that Brooks told him he had been in trouble with the police recently with respect to the possession of marijuana; that he wanted defendant to keep a package for him at his apartment and that he would telephone defendant when he was ready to pick it up. Defendant further testified that Brooks did not tell him what was in the package; that he did not look inside it but placed it in a trunk in a closet. Defendant further testified that Brooks came to the apartment for the package on September 10, 1963, at about 8:30 p. m.; that he took it into the bathroom and when he came out, the package was smaller than it had been and that he had two more packages, one of which he said he was taking downstairs to friends, and another which with $15 he left on the table. Defendant stated "The $15 was supposedly for me keeping this package for him."

As to his conversation with Officer Ware, defendant testified that he did not sell narcotics to Brooks; that Brooks brought the narcotics to his apartment; and that this was his (defendant's) first involvement in a narcotics violation. The State presented no evidence in rebuttal, and defendant's explanation as to how the narcotics came to be in his apartment stands undenied.

One Murphy Fabian testified on behalf of defendant that he ran a dry cleaning plant; that he had known defendant for twelve years; that defendant had worked for him for eight years. He stated that defendant's reputation in the community for truthfulness and as a law-abiding citizen was very good.

It is defendant's contention that his testimony establishes entrapment; that the burden is on the State to rebut such evidence and that the State has failed to sustain that burden. This court had the question before

it in a recent case, People v. Jones, 73 Ill App2d 55, 219 NE2d 12. There we held that a conviction for the sale of narcotics must be reversed where the State failed to controvert defendant's testimony that the police supplied the narcotics which appeared to be the subject of an illegal sale. In our decision in the Jones case we relied on People v. Strong, 21 Ill2d 320, 172 NE2d 765, in which case the Illinois Supreme Court, faced with the same contention, held that a conviction for the sale of narcotics could not be sustained where "the undisputed testimony of defendant strongly tends to prove that defendant was supplied with the narcotics by . . . the government employee." (P 325.)

The State attempts to distinguish the foregoing decisions on the ground that in those cases the informer was not called as a witness, whereas in the instant case Charles Brooks, the police informer, testified for the State. Although the courts in People v. Strong, supra, and People v. Jones, supra, considered significant the failure of the police informer to testify, we conclude that the presence of the police informer on the witness stand is not in itself controlling on the issue of entrapment. Equally important is the weight to be given an informer's testimony, particularly when it fails to controvert the defendant's testimony on vital aspects of the case.

The State urges that it was defendant's duty to cross-examine the informer Brooks with respect to the claim of entrapment, reasoning that when Brooks testified, the prosecution could not anticipate the defendant's case. We do not agree. The State had ample opportunity to refute defendant's contention that Brooks supplied the narcotics by recalling him to the witness stand in rebuttal. The judgment must be reversed.

Judgment reversed.

SULLIVAN, P. J. and DEMPSEY, J., concur.